UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Desean James Solomon (1),<br>Leontawan Lentez Holt (3), and<br>Michael Allen Burrell (4),<br><br>Defendants. | Case No. 23-cr-156 (SRN/TNL)<br><br>**ORDER ON DEFENDANT HOLT'S MOTION FOR A JUDGMENT OF ACQUITTAL** |

Esther Mignanelli, Thomas Calhoun-Lopez, Kristian Weir, and Campbell Warner, United States Attorney's Office, 300 South Fourth Street, Suite 600, Minneapolis, MN 55415, for the Government.

Thomas C. Plunkett, Attorney at Law, 101 East Fifth Street, Suite 1500, St. Paul, MN 55101, for Defendant Desean James Solomon.

Frederick Clayton Tyler and Karen E. Mohrlant, F. Clayton Tyler, PA, 331 Second Avenue South, Suite 230, Minneapolis, MN 55401, for Defendant Leontawan Lentez Holt.

Steven Wolter, Kelley, Wolter & Scott, P.A., 431 South Seventh Street, Suite 2530, Minneapolis, MN 554415, for Defendant Michael Allen Burrell.

SUSAN RICHARD NELSON, United States District Judge

     Defendant Leontawan Holt killed Rayshawn Brown in a shootout. The Government charged him with using a firearm during and in relation to murder in aid of racketeering, 18 U.S.C. §§ 924(c)(1)(A), (j), (j)(2), 1959(a)(1); Minn. Stat. §§ 609.05, .185(a)(1).

- 1 -

(Doc. 1 at 12–14.)  At trial, he argued that he was defending himself.  (*See* Doc. 337.)  But the jury disagreed and convicted him.  (Doc. 370.)

Mr. Holt now moves for a judgment of acquittal or a new trial, arguing that no reasonable jury could have rejected his self-defense claim.  (Doc. 407.)  After careful consideration, the Court denies the motion.

I.     **Background**

Late in the evening on April 23, 2022, Jesse Walker walked into Williams Pub with a friend in a blue jacket.  (Doc. 329 at 431:15–432:14; Ex. 401 at 34:30–35:15.)  Mr. Walker was a member of the Tre Tre Crips—a rival gang of the Minneapolis Bloods—and had been convicted of stabbing a Blood back in 2016.  (Doc. 329 at 521:1–19.)  He and his friend were screened for weapons at the door.  Then they stopped and greeted Mr. Brown, another Crip who was standing nearby.  (*Id.* at 431:24–432:14; Ex. 401 at 35:14–36:05.)  After chatting for a few minutes, the three went their separate ways.  Mr. Brown left the pub, and the other two split up inside.  (Doc. 329 at 432:19–433:13; Ex. 401 at 38:10–30.)

Now on his own, Mr. Walker ran into four Bloods—Mr. Holt, his co-defendant Desean Solomon, Jaqwon Smith, and someone named "Chuck."  (Ex. 401 at 38:30–39:00; *see also* Doc. 388 at 1663:9–23.)  The Bloods formed a semicircle around Mr. Walker and talked for a bit.  (Doc. 329 at 434:3–14; Ex. 401 at 39:00–40:29.)  Then Mr. Holt suddenly punched Mr. Walker, apparently in retaliation for the 2016 stabbing.  (Doc. 329 at 435:12; Ex. 401 at 40:29–30.)  A brawl broke out.  (Ex. 401 at 40:29–42:00.)  And during the fight, Mr. Brown came back inside and tried to join in but promptly gave up and left again.  (Doc. 329 at 436:5–18; Ex. 401 at 40:53–41:14.)

As the fight broke up, Mr. Holt headed for the exit. (Ex. 401 at 42:00–50.) He crossed the street to the south and grabbed two guns from his car. (Ex. 424 at 0:12–21.) Then he crossed back to the north and met up with Mr. Smith. (*Id.* at 1:10–22; Ex. 416 at 0:58–1:17.) Mr. Holt passed behind Mr. Brown's car as Mr. Brown parked and got out, but Mr. Holt did not acknowledge him at that time. (Ex. 424 at 1:17–25; Doc. 329 at 495:20–496:15.)

Mr. Holt gave Mr. Smith one of the guns, and Mr. Smith donned gloves as they walked eastbound. (Ex. 416 at 1:00–18.) They caught up with Mr. Solomon and Chuck, who were also headed east. Then the quartet about-faced to the west, back toward the pub. (*Id.* at 1:31.) Meanwhile, Mr. Brown was walking east about 45 seconds behind. (*Compare* Ex. 420 at 0:46–0:52, *with id.* at 1:33–36.) So he was soon face to face with the Bloods. (Ex. 416 at 1:40.)

Just as he was brushing shoulders with Mr. Holt, Mr. Brown turned and raised a gun concealed inside his jacket pocket. (*Id.* at 1:41–42; Doc. 329 at 499:2–500:17, 503:11–504:11, 512:3–15.) The Bloods jumped back in surprise. (*See, e.g.*, Doc. 329 at 500:12–17.) And in a split second, Mr. Holt pulled out his own gun and fired two shots, hitting Mr. Brown in the arm and chest. (Ex. 416 at 1:41–42; Doc. 329 at 500:12–14, 512:13–15, 536:22–545:8, 580:13–581:16.)[1]

---

[1] The Government maintains that a reasonable jury could find that Mr. Holt raised his gun first—or at least at the same time as Mr. Brown. (Doc. 412 at 8.) The Court disagrees. Though it all happened in the blink of an eye, the video appears to show Mr. Brown raising his arm first and Mr. Holt jumping back before pulling out his own gun. (Ex. 416 at 1:41–42.) The Government's witness agreed that "Mr. Holt [was] reacting to the action of Mr. Brown," and that Mr. Brown "fired his shot at [Mr. Holt] . . . . before Holt could raise his gun and fire back." (Doc. 329 at 500:3–14, 512:3–15.) And there was no evidence or testimony to the contrary.

At some point, Mr. Brown fired one shot in the Bloods' direction, but his gun jammed before he could get any more off. (Ex. 416 at 1:41–42; Ex. 426 at 248; Doc. 329 at 503:11–504:11, 587:21–23.) Mr. Brown ran east, where he collapsed and died. (Ex. 416 at 1:42–2:09; Ex. 418 at 0:12–23; Doc. 329 at 455:3–11.) And the Bloods ran west, got in their car, and fled the scene. (Ex. 416 at 1:49–2:09; Doc. 329 at 461:3–21.)

The Government charged Mr. Holt with using a firearm during and in relation to a crime of violence resulting in death, 18 U.S.C. § 924(c)(1)(A), (j), (j)(2). The alleged crime of violence was murder in aid of racketeering, *id.* § 1959(a)(1). And the alleged murder was first degree murder under Minnesota law, Minn. Stat. § 609.185(a)(1). (Doc. 1 at 12–14.)

At trial, Mr. Holt argued that he was defending himself and asked the Court to instruct the jury on the law of self-defense in Minnesota. (Doc. 337 at 2.) The Government objected, arguing that Mr. Holt had a duty to retreat and failed to do so. (Doc. 333 at 1.) But viewing the evidence at that time in the light most favorable to Mr. Holt, the Court found that, although there was "significant evidentiary support" for rejecting his defense, he produced "at least some evidence" to raise the issue. (Doc. 337 at 2, 8, 12.) So the Court granted his request. (Doc. 337 at 13; Doc. 396 at 2203:9–22, 2209:22–2212:2.)

After deliberating for three days, the jury found Mr. Holt guilty. (Docs. 360, 362, 367, 370.) He now moves for a judgment of acquittal, *see* Fed. R. Crim. P. 29(c)(1), or a new trial, *see* Fed. R. Crim. P. 33(b), challenging only the sufficiency of the evidence disproving self-defense. (Doc. 407; Doc. 408 at 6.)

## II.   Analysis

Minnesota law governs Mr. Holt's self-defense claim. *See United States v. Mallory*, 104 F.4th 15, 18 (8th Cir. 2024). It permits the intentional taking of another's life "when necessary in resisting or preventing an offense which the actor reasonably believes exposes the actor or another to great bodily harm or death." Minn. Stat. § 609.065; *see also id.* § 609.06, subd. 1(3). Four elements are required: (1) the "absence of aggression or provocation on the part of the defendant," (2) his "actual and honest belief" that he was in "imminent danger of great bodily harm," (3) "the existence of reasonable grounds for that belief," and (4) "the absence of a reasonable possibility of retreat to avoid the danger." *State v. Blevins*, 10 N.W.3d 29, 35 (Minn. 2024) (cleaned up) (citation omitted); *see also* 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, CRIMJIG 6.12–14 (7th ed. 2023). "An aggressor in an incident has no right to a claim of self-defense," but his right is revived "if he actually and in good faith withdraws from the conflict and communicates that withdrawal, expressly or impliedly, to his intended victim." *Bellcourt v. State*, 390 N.W.2d 269, 272 (Minn. 1986). Once Mr. Holt successfully raised self-defense as an issue, it became the Government's burden to disprove one or more of the elements beyond a reasonable doubt. *State v. Basting*, 572 N.W.2d 281, 286 (Minn. 1997); *see also State v. Graham*, 371 N.W.2d 204, 209 (Minn. 1985).

### A.   Judgment of Acquittal

When reviewing a defendant's motion for a judgment of acquittal, the Court "view[s] the evidence in the light most favorable to the verdict." *United States v. Long Pumpkin*, 56 F.4th 604, 610 (8th Cir. 2022). The Court must "uphold the jury's decision

'if there is an interpretation of the evidence that would allow a reasonable jury to find the defendant guilty beyond a reasonable doubt.'" *Id.* (quoting *United States v. Moore*, 108 F.3d 878, 881 (8th Cir. 1997)). So if there is even one of many interpretations of the evidence that would allow a reasonable jury to find an element of self-defense disproven beyond a reasonable doubt, the verdict must stand.

Mr. Holt argues that the barfight with Mr. Walker and the shootout with Mr. Brown were separate incidents, so he focuses on the shootout. (*See* Doc. 408 at 7–12.) From this perspective, Mr. Holt argues, a reasonable jury could find that he had a right to defend himself. In the pub, Mr. Holt points out that he attacked Mr. Walker, not Mr. Brown. Once on the street, Mr. Holt argues that he did not even acknowledge Mr. Brown until Mr. Brown raised his gun, and at that point, he actually and reasonably feared for his life and had no reasonable possibility of retreat. *See, e.g.*, *State v. Thompson*, 544 N.W. 2d 8, 12 (Minn. 1996) ("Because [decedent] had a gun pointed at [defendant], [defendant] could reasonably have believed that by shooting [decedent], he was preventing an offense which exposed him to great bodily harm."); *State v. Hunter*, No. A23-0908, 2024 WL 1987884, at *3 (Minn. Ct. App. May 6, 2024) ("If the jury believed [defendant]'s testimony, it would have determined that [defendant] met all four elements for self-defense because [decedent] shot at [defendant] first, [defendant] honestly and reasonably feared for his life as he was being shot at, and, since [decedent] was shooting at him, [defendant] had no way to retreat, so shooting back was reasonable force.").

The Government responds that another reasonable interpretation of the evidence was available to the jury. (Doc. 412 at 6–12.) It argues that a reasonable jury could take a

broader view of the events that night—a conflict between two rival gangs that was provoked when Mr. Holt threw the first punch and that persisted until the Bloods left the scene of the shootout. This longer period is still only a few minutes. (*See* Ex. 401 at 40:28–42:48; Ex. 424 at 10–1:25; Ex. 416 at 0:49–1:42; Doc. 329 at 505:25–510:22.) And under this interpretation of the evidence, the Government argues that it successfully disproved two elements of self-defense.

First, the Government argues that Mr. Holt provoked the conflict by throwing the first punch inside the pub. *Cf. State v. Carridine*, 812 N.W.2d 130, 144–45 (2012) (finding "substantial evidence in the record that [defendant] was the initial aggressor" where defendant "made several statements that indicated an intent to harm" both the decedent and his associates, "left the bar shortly after [decedent]," and "walked up to [decedent's] car"); *State v. Radke*, 821 N.W.2d 316, 325 (Minn. 2012) (finding defendant "was the aggressor who provoked the events leading to [decedent's] death" where defendant's actions prompted decedent to "appear[] with a shotgun"). Though Mr. Holt beat up Mr. Walker, not Mr. Brown, the Government notes that it was foreseeable that attacking one Crip would prompt other Crips to retaliate. The Government presented plenty of evidence that gangs promote an all-for-one and one-for-all culture. For example, cooperating witnesses testified that gang rules require members to know their opposition and join the fight when another member is insulted or attacked. (*See, e.g.*, Doc. 328 at 239:24–242:13, 259:4–262:17, 349:21–350:7; Doc. 388 at 1642:14–1646:11.) As one witness put it, "'One shoot, all shoot.' 'One fight, all fight.' 'Nobody get left behind.'" (Doc. 388 at 1645:22--23.)

- 7 -

Second, the Government argues that Mr. Holt had a reasonable opportunity to retreat and avoid danger. *Cf. State v. Trifiletti*, 6 N.W.3d 79, 97 (Minn. 2024) (affirming guilty verdict where defendant "had the opportunity to drive away" before guns were drawn but instead "provoked further conflict by following" the decedent). The Government points out that Mr. Holt left the bar and walked to his car after the fight broke up. He could have driven away, signaling a withdrawal from the Bloods-Crips conflict and reviving his right to defend himself in a future encounter. *See, e.g.*, *Bellcourt*, 390 N.W.2d at 272. But he did not. He grabbed two guns, regrouped with his associates, and walked back toward the pub while at least one of them put on gloves. In the Government's view, the Bloods were not avoiding a shootout; they were looking for one.

The Court agrees with the Government that a reasonable jury could take a broader view of the evidence and find one or more elements of self-defense disproven beyond a reasonable doubt. Thus, the verdict must stand.

### B. New Trial

Mr. Holt also moves for a new trial under Federal Rule of Criminal Procedure 33, which allows a court to "vacate any judgment and grant a new trial if the interest of justice so requires." When making this decision, the Court "has much broader discretion." *United States v. Lemoine*, 104 F.4th 679, 685–86 (8th Cir. 2024). The Court need not view the evidence in the light most favorable to the verdict and "may weigh the evidence" and "choose to believe or disbelieve witnesses." *Id.* at 686. Even when there is substantial evidence to sustain the verdict, the Court may grant a new trial "if it is convinced that 'the

evidence weighs so heavily against the verdict that a miscarriage of justice may have occurred.'" *Id.* (quoting *United States v. Harriman*, 970 F.3d 1048, 1058 (8th Cir. 2020)).

The Court is not convinced that the evidence weighs heavily against the verdict. Mr. Holt's narrow framing of the incident as a split-second standoff misses the forest for the trees. Where there is a battle between groups, it is reasonable for a jury to zoom out and look at the bigger picture rather than parse through one-on-one duels. Indeed, Minnesota law suggests that a jury should consider the full timeline, not just a snapshot of the moment the incident turned deadly. *Cf. Carridine*, 812 N.W.2d at 145 ("[I]f a person begins or induces an assault that leads to the necessity of using force in that person's own defense, that person must attempt to retreat, regardless of whether the victim escalates the situation by using deadly force.").[2]

The Court therefore finds that a miscarriage of justice has not occurred, and Mr. Holt is not entitled to a new trial.

---

[2] In an opinion published the day after the verdict, the Minnesota Supreme Court endorsed a narrow look at the "moment the defendant elected to use force." *State v. Valdez*, 12 N.W.3d 191, 200 n.10 (Minn. 2024). But this standard applies only in defense-*of-others* cases.

In *Valdez*, the court held that "the fourth element of a *self*-defense claim—the duty to retreat—[does not] appl[y] to a defense-*of-others* claim." *Id.* at 197. The court reasoned that "the focus should be on the *person in peril's* ability to retreat," so the court further held that the fact-finder must evaluate whether the defendant reasonably believed that the person in peril could not safely retreat. *Id.* at 198–99. And finally, the court held that "the fact-finder must focus on the moment the defendant elected to use force," so any "evidence that the [person in peril] may have been able to retreat *before* [that moment] does not foreclose [the defendant's] defense." *Id.* at 200 n.10.

In a *self*-defense case, by contrast, "the defendant and the person and peril are one and the same." *Id.* at 199. The defendant has a duty to retreat if reasonably possible, and he may even be culpable for provoking the violence against him. So Minnesota courts take a broader look at the defendant's choices and apply a "forfeiture-by-wrongdoing model" that demands he "be free from fault in bringing on the difficulty." *State v. Edwards*, 717 N.W.2d 405, 412 (Minn. 2006) (plurality opinion) (citations omitted); *see also Carridine*, 812 N.W.2d at 145 (adopting the *Edwards* plurality's approach).

## III. Order

Based upon the foregoing, and all the files, record, and proceedings herein,

**IT IS HEREBY ORDERED** that

1. Mr. Holt's motion for a judgment of acquittal or a new trial [Doc. 407] is **DENIED**.

Dated: February 26, 2025                              s/ Susan Richard Nelson
                                                                        SUSAN RICHARD NELSON
                                                                         United States District Judge